# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

QUANTISHA O'NEAL, and other
similarly situated individuals,

     Plaintiff,

v.                                                          Case No. 3:22-cv-10-MMH-MCR

PROTECTIVE ENTERPRISES
PUBLIC SAFETY, LLC and
MARCUS D. WILLIAMS,
individually,

     Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on the Defendants' Motion for

Summary Judgment (Doc. 43; Motion), filed on September 18, 2023.  In the

Motion, Defendants, Protective Enterprises Public Safety, LLC (Protective

Enterprises) and Marcus Williams, request the entry of summary judgment in

their favor on the claims in Plaintiff Quantisha O'Neal's[1] First Amended

Collective Action Complaint (Doc. 24; Amended Complaint) filed on March 29,

---

[1] Although Plaintiff's counsel consistently spells Plaintiff's surname as "Oneal," exhibits in the record include documents completed by Plaintiff, as well as a government-issued driver's license and social security card, all of which show that she spells her surname "O'Neal."  <u>See generally</u> Exhibit "9" (Doc. 61-1) (including redacted versions of these documents in an exhibit which Defendants re-filed at the Court's direction).  The Court will use Plaintiff's spelling of her own name and direct the Clerk of the Court to correct the spelling of Plaintiff's surname in the caption of the case.

2023.   In support, Defendants attach the Declaration of Chief Marcus D. Williams (Doc. 43-2; M. Williams Declaration), the Declaration of Major Linda Williams (Doc. 43-11; L. Williams Declaration), and several exhibits.[2]   O'Neal has responded in opposition to the Motion.   <u>See</u> Plaintiff's Response to Defendant's [sic] Motion for Summary Judgment (Doc. 50; Response), filed October 31, 2023.   In support, O'Neal attaches her own sworn declaration. <u>See</u> Sworn Declaration of Plaintiff Quantisha Oneal (Doc. 50-1; O'Neal's Declaration).   Defendants have filed a reply.   <u>See</u> Defendants' Reply in Support of Defendants' Motion for Summary Judgment (Doc. 53; Reply) on November 21, 2023.   Accordingly, this matter is ripe for review.

## I.    Procedural History

Plaintiff Quantisha O'Neal initiated this action on January 4, 2022, by filing her Collective Action Complaint (Doc. 1; Complaint).   In the Complaint, she asserted two causes of action: a claim for failure to pay minimum wages and a claim for retaliatory constructive discharge, both under the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u> ("FLSA").   <u>See</u> Complaint at 5, 12.   On November 23, 2022, O'Neal requested leave to amend her Complaint.   <u>See</u> <u>generally</u> Plaintiff's Motion for Leave to File First Amended Complaint (Doc.

---

[2] For ease of reference, the Court's citations to page numbers in documents in this record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

20; Motion to Amend).   As grounds, among other things, she explained she sought to "narrow down Plaintiff's damages to one (1) week under her FLSA minimum wage violation claim (Count I) (based on Defendants' own time and pay records produced during discovery)."   Id. at 3.   The Honorable Monte C. Richardson, United States Magistrate Judge, granted the Motion to Amend on March 29, 2023.   That same day, O'Neal filed her Amended Complaint, which is the operative complaint in this action.   In it she asserted three claims.   In Count I, O'Neal asserted that Defendants failed to pay her the minimum wage required by the FLSA.   See Amended Complaint at 5–11.   In Count II, O'Neal brought a claim for unpaid wages pursuant to state law.   See id. at 11–16. And in Count III, O'Neal raised a state-law claim for breach of contract.   See id. at 16–20.

On April 26, 2023, Defendants moved to dismiss all three claims in the Amended Complaint.   See generally Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 25; Motion to Dismiss).   Specifically, Defendants argued that the manner in which O'Neal pled her claim in Count I ran afoul of the Eleventh Circuit's prohibition against shotgun pleadings because even though O'Neal premised her claim in Count I "entirely on not being paid at all for her very last pay period worked," O'Neal included discussion of other alleged FLSA violations which she was not pursuing, such as "a claim for unpaid lunch breaks."   See id. at 2–3, 7.   Defendants also

argued that the Court should decline to exercise supplemental jurisdiction over the state-law claims in Counts II and III.  See id. at 9.   After Defendants filed their Motion to Dismiss, O'Neal sought leave to file a second amended complaint, but Judge Richardson denied that request on July 3, 2023.[3]  See generally Order (Doc. 36; Order Denying Leave to Amend).   At about the same time, O'Neal also filed a response to the Motion to Dismiss in which she argued that her pleading of Count I did not violate the Eleventh Circuit's rule prohibiting shotgun pleadings because "[t]he only basis" for this argument was her "mention of 'unpaid lunch breaks' which Plaintiff is not seeking damages for in Count I."   Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 31; Motion to Dismiss Response) at 7.  O'Neal further argued that the Court should retain jurisdiction over the claims in Counts II and III.  See id. at 9–13.  On December 28, 2023, Judge Richardson recommended that the Court grant the Motion to Dismiss to the extent that it decline to exercise supplemental jurisdiction over the claims in Counts II and III, but deny the Motion to Dismiss as to Count I.  See Report

---

[3] Judge Richardson found that O'Neal failed to show good cause to file a second amended complaint because she "did not meaningfully seek the discovery [purportedly prompting the request] until the eve of the expiration of [the] discovery deadline and over 15 months after filing her original complaint."   See Order Denying Leave to Amend at 6. Specifically, he noted that O'Neal "waited until . . . just one day before the discovery deadline" to take the deposition of Marcus Williams, which "led to Plaintiff [seeking leave to amend] after the discovery deadline passed" and shortly before the dispositive motion deadline.   See id. at 5–6.

and Recommendation (Doc. 54; Report) at 19.   Specifically, Judge Richardson recommended that the Court reject Defendants' argument that Count I as pled violated the prohibition on shotgun pleadings because "[a]lthough Plaintiff did mention unpaid lunch breaks in the Amended Complaint, clearly Plaintiff is alleging that Defendants failed to provide Plaintiff her last paycheck."   See id. at 19.   Neither party objected to the Report, and the Court adopted it on January 23, 2024.   See generally Order (Doc. 55; Order Adopting Report).   In doing so, the Court dismissed Counts II and III of the Amended Complaint without prejudice.   See id. at 3.   In the instant Motion, Defendants now assert that they are entitled to summary judgment on Count I of the Amended Complaint, which is the only remaining claim before the Court.[4]   See generally Motion.

## II.    Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(a).   The record to be considered on a motion for

---

[4] Partly because O'Neal filed her Amended Complaint late in the discovery process, the parties filed the instant Motion, Response, and Reply before the Court ruled on the Motion to Dismiss.   Accordingly, much of these filings is devoted to Counts II and III.   Since the Court has now dismissed the claims in Counts II and III without prejudice, the instant Motion is due to be denied as moot to the extent that Defendants seek summary judgment on the claims in these Counts.

summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Rule 56(c)(1)(A).[5]   An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.   <u>See Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)).   "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."   <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine

---

[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u>   "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."   <u>Campbell v. Shinseki</u>, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

In citing to <u>Campbell</u>, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority."   <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

issues of material fact to be determined at trial.   See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).   "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (citations and quotation marks omitted).   Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case.").   In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."   Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III.   Background

Defendant Protective Enterprises is a security and surveillance services company.   See Amended Complaint at 3.   Defendant Marcus Williams owns

and manages Protective Enterprises.  See id. at 2.   Except for a three-month period in early 2021, O'Neal worked for Protective Enterprises as a dispatcher from September 9, 2020, until October 1, 2021.  See id. at 3.   In her Amended Complaint, because she did not receive her final paycheck from Protective Enterprises, O'Neal contends that Defendants failed to pay her the required minimum wage for her final week of work as the FLSA mandates.  See id. at 7–8.   In addition, in her Amended Complaint O'Neal alleges that Defendants improperly deducted 2.5 hours of wages from her weekly pay "corresponding to lunch hours" that she was not actually permitted to take.  See id. at 8.

Defendants maintain that Protective Enterprises issued O'Neal's final paycheck and held it for her to pick up, but assert that she did not receive her paycheck for reasons unrelated to them.  First, Defendants explain that prior to the conclusion of O'Neal's second-to-last pay period she elected to pick up physical checks at Protective Enterprises' headquarters rather than receiving her pay by direct deposit.  See M. Williams Declaration at 2.   While O'Neal retrieved her second-to-last paycheck in this manner, she never picked up her final paycheck.  Second, Defendants state that Protective Enterprises could not mail the check to O'Neal because she had three different addresses on file. See id. at 3.   And Protective Enterprises had not previously mailed any paycheck to O'Neal.  Id.   Third, Defendants argue that Marcus Williams and Linda Williams "attempted to call" O'Neal multiple times to "advise her that

her check was ready" to be picked up or mailed to her if she "provided a mailing address," but these efforts were unsuccessful.[6]   See <u>id.</u> at 2; L. Williams Declaration at 1.   In O'Neal's Declaration, she "categorically disputes" the statements by Marcus Williams and Linda Williams in their declarations.   See O'Neal's Declaration at 2–3.   She also asserts that she is "not sure what 'efforts'" or "'attempts'" Protective Enterprises, Marcus Williams, or Linda Williams made to contact her, but she never received any communication from them regarding her final paycheck.   See <u>id.</u>   And she states that she "called multiple times about [her] last check and [she] never received a response."   <u>Id.</u> at 3.   O'Neal still has not received her final paycheck.   <u>Id.</u> at 3.

## IV.   Arguments of the Parties

In the Motion, Defendants contend that they are entitled to summary judgment as to the claim in Count I because they "issued Plaintiff's last paycheck on the regular payday for the payroll period," attempted to provide this check to her, and "[h]ad Plaintiff contacted Defendants before filing the lawsuit, Defendants would have provided Plaintiff with her last paycheck." <u>See</u> Motion at 11.   O'Neal responds that there are "issues of material fact in dispute with regards to [her] last check" based on her contentions that she

---

[6] Marcus Williams states that he "was able to reach Plaintiff's mother once," and her mother "said she would let Plaintiff know that [he] had called."   M. Williams Declaration at 3.   O'Neal does not dispute that Marcus Williams contacted her mother, "whom he personally knew," but maintains that "he never told [her] mother about [her] last check."   O'Neal's Declaration at 2.

"called multiple times about her last check and she never received a response" and that Defendants never actually contacted her.   See Response at 6–7.   As such, O'Neal argues that summary judgment is inappropriate.

As an additional basis for denying entry of summary judgment, O'Neal asserts that her "claims for minimum wage violations under the FLSA are not limited to Plaintiff's last pay period."   See id.   Specifically, she contends that discovery has revealed "that Plaintiff was not deducted 30 minutes for 'lunch periods' as Plaintiff previously thought," but instead "was unlawfully deducted for one (1) full hour of 'lunch' on every shift she worked at least 8 hours."   Id.   "[C]oupled with other deductions," O'Neal asserts that Defendants' actions brought her rate of pay below the minimum wage for several additional workweeks, and thus that her claim in Count I is not limited to her final paycheck.   See id. at 7–8.   According to O'Neal, these additional deductions, among others, include an eight-hour deduction from O'Neal's pay "as punishment for 'sleeping on the job' and being 'out of uniform.'"   See id. at 8–9.   Based on these additional deductions, O'Neal asserts that her claim in Count I extends "to each and every week that her hourly rate of pay on a weekly basis fell below the applicable minimum wage rate."   See id. at 9.

## V.   Discussion

The Court begins by addressing the scope of O'Neal's claim in Count I of her Amended Complaint, and then addresses whether she has shown a dispute

of material fact as to that claim which is sufficient to survive a motion for summary judgment.   Because, for the reasons discussed below, the Court determines that summary judgment is due to be granted as to O'Neal's claim in Count I, the Court does not address Defendants' alternative request for partial summary judgment as to the applicable minimum wage rate.[7]   See Motion at 11–12.

### A. O'Neal's Claim in Count I is Limited to Her Final Pay Period

O'Neal contends that "[d]iscovery in this matter revealed that" Defendants deducted one hour per day from her pay, not 30 minutes "as Plaintiff previously thought."   Response at 7.   According to O'Neal, "[t]his one-hour deduction, coupled with other deductions taken from her paycheck, brought her hourly payrate below the minimum wage threshold."   See id.   On this basis, she argues that her "minimum wage claims are not only limited to not receiving her last pay check."   Id. at 8.

This argument, which is premised on a claim O'Neal did not plead in her Amended Complaint, is unavailing.   "A plaintiff may not amend her complaint

---

[7] According to O'Neal, her "last wage rate was $12.00 an hour"—well in excess of both the state and federal minimum wage.   See Amended Complaint at 7.   In light of the Court's determination that O'Neal's claim in Count I is limited to her assertion that Defendants failed to pay her final paycheck at all, it is of no moment whether "the higher Florida rate" applies to this claim as O'Neal contends.   See Response at 10.   Notably, the check Protective Enterprises issued for O'Neal's last pay period reflects an hourly rate of $12 per hour, and although Protective Enterprises made a deduction, O'Neal's hourly rate remained well in excess of both the federal and state minimum wage requirement.   See Doc. 43-8 at 1–2 (reflecting a $24 deduction for this pay period).

through argument in a brief opposing summary judgment."   <u>Gilmour v. Gates,</u>
<u>McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).   It is true that in
Count I of the Amended Complaint O'Neal alleges that Defendants improperly
deducted 2.5 hours per week for lunch breaks she was not allowed to take.   <u>See</u>
Amended Complaint at 8.   However, O'Neal did not assert these facts as a basis
for her recovery, and has repeatedly represented and acknowledged that in
Count I she was not seeking relief based upon these deductions.   Indeed, she
stated that her purpose in filing the Amended Complaint was at least partially
to "narrow down Plaintiff's damages to one (1) week under her FLSA minimum
wage violation claim (Count I)."   <u>See</u> Motion to Amend at 3.   Notably, O'Neal
sought leave to file a second amended complaint based on new evidence which,
according to her, established this very claim—that "the minimum wage
violations were <u>not</u> only limited to Plaintiff's last unpaid check."   <u>See</u> Plaintiff's
Motion for Leave to File Second Amended Complaint (Doc. 30; Second Motion
to Amend) at 4 (emphasis added).   But the Court denied her request.   And, in
opposing Defendants' Motion to Dismiss, O'Neal maintained that she was "not
seeking damages for" the lunch break deductions "in Count I" of the Amended
Complaint.[8]   Motion to Dismiss Response at 7.   Judge Richardson agreed with

---

[8] Indeed, O'Neal went so far as to assert that Defendants were "disingenuous[ ]" in
contending that Count I conflates multiple theories of liability—a contention she
characterized as "inconceivabl[e]."   <u>See</u> Motion to Dismiss Response at 7.

this assertion in his Report, stating that "[a]lthough Plaintiff did mention unpaid lunch breaks in" Count I, she was "clearly . . . alleging that Defendants failed to provide Plaintiff her last paycheck"—a conclusion to which O'Neal did not object.[9]   Report at 19; <u>see also</u> Order Adopting Report at 1 (noting that no party objected to the Report and the time for doing so had passed).   O'Neal cannot recast or expand the claim she actually pled in her Response.   <u>See</u> <u>Gilmour</u>, 382 F.3d at 1315.   Accordingly, the Court concludes that O'Neal's claim in Count I is limited to her assertion that Defendants failed to pay her the requisite minimum wage during her final pay period.

## B. Defendants are Entitled to Summary Judgment

Having determined that the scope of O'Neal's claim in Count I of her Amended Complaint is limited to Defendants' failure to pay her for work performed in her last pay period, the Court turns to the question of whether she has identified a genuine issue for trial which would permit this claim to survive summary judgment.   <u>See</u> <u>Jeffery</u>, 64 F.3d at 593–94.   One of the necessary elements a plaintiff must establish to prevail on an FLSA claim is that the <u>defendants</u> "failed to pay" the minimum wage required by law.   <u>See</u> Eleventh

---

[9] If O'Neal had intended Count I to encompass both a claim that Defendants made improper deductions and a claim that Defendants failed to pay her for her final week of work, she would have violated the Eleventh Circuit's prohibition on shotgun pleadings by combining distinct theories of liability into the same count.   <u>See</u> <u>Doe v. Hernando Cnty. Sch. Dist.</u>, No. 8:23-cv-1772-CEH-AAS, 2023 WL 5758934, at *2 (M.D. Fla. Sept. 6, 2023) ("To avoid improper commingling, claims that [p]laintiffs assert under distinct theories of liability must be set forth in different counts.").

Circuit Pattern Jury Instructions - Civil 4.14 Fair Labor Standards Act - 29 U.S.C. §§ 201 et seq. (2022); <u>see also</u> <u>Sec'y of Lab. v. Labbe</u>, 319 F. App'x 761, 763 (11th Cir. 2008) (identifying the elements of an FLSA claim).   While there is no dispute in this case that O'Neal has not <u>received</u> her final paycheck, she has not presented evidence supporting even an inference that <u>Defendants failed to pay her</u> for the work performed during that period.

As an initial matter the Court notes that in her Declaration, O'Neal states that she "categorically disputes" the allegations in the M. Williams Declaration and the L. Williams Declaration.   <u>See</u> Response at 5, 7 (quoting O'Neal's Declaration at 2, 3).   However, O'Neal contradicts this blanket denial by conceding that she is "not sure" what attempts M. Williams and L. Williams made to contact her.   <u>See</u> O'Neal's Declaration at 2, 3.   Moreover, it does not appear that O'Neal actually disputes some statements in these declarations which corroborate her allegations in the Amended Complaint or O'Neal's Declaration.   <u>Compare</u> Amended Complaint at 7, 9 (alleging that Protective Enterprises first employed O'Neal from September 9, 2020, to January 4, 2021, and that it re-hired her on "April 18, 2021"), <u>with</u> M. Williams Declaration at 1–2 (stating that Protective Enterprises paid O'Neal for work "from September 9, 2020 to January 4, 2021," and re-hired O'Neal on or about "April 18, 2021"). Regardless, O'Neal's conclusory statement that she "categorically dispute[s] the allegations" in the M. Williams and L. Williams declarations is insufficient to

show more than a "mere scintilla" of evidence in support of her position.   See Kesinger, 381 F.3d at 1247.   The Eleventh Circuit Court of Appeals "'has consistently held that conclusory allegations without specific supporting facts have no probative value'" and are insufficient to create a genuine issue of material fact for purposes of summary judgment.   See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)) (granting summary judgment and rejecting a plaintiff's reliance on a "brief, conclusory assertion" in his affidavit).   Indeed, in Leigh, the court observed, "'[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.'"   Id. (alteration in original) (quoting Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978)).   Accordingly, the Court does not credit O'Neal's broad, categorical denial of all statements in Marcus Williams' and Linda Williams' declarations in determining whether she disputes a material fact in this case.   Instead the Court considers whether O'Neal has created an issue of fact for trial by actually disputing the specific factual statements set forth in the sworn declarations filed in support of the Motion.

Based on the undisputed facts in the record, upon becoming a Protective Enterprises employee O'Neal elected to receive her pay via direct deposit.   See M. Williams Declaration at 2.   Shortly before the end of her employment,

O'Neal opted to stop receiving her pay by direct deposit, and instead chose to "receive her paycheck directly" in the form of a physical check. See id. As such, for her second-to-last pay period, Protective Enterprises prepared a physical check for O'Neal, and O'Neal picked it up at Protective Enterprises' headquarters. See id. O'Neal does not dispute that Protective Enterprises issued her final paycheck in the same manner as it did for the previous pay period, or that Defendants held her final paycheck for her to pick up at the same location. See id. Despite this, O'Neal never picked up her final check.[10] See M. Williams Declaration at 2. And O'Neal does not dispute Defendants' contention that Protective Enterprises had never mailed her a paycheck and had multiple addresses for her on file.

Nevertheless, O'Neal attempts to create a genuine dispute of material fact by contending that she "never heard from" Defendants "about [her] last check." See O'Neal's Declaration at 2; Response at 6–7. The specificity of certain statements in O'Neal's Declaration as to this issue is noteworthy for what she says and does not say. O'Neal states that she received no communication from Protective Enterprises "about [her] last check," received no phone calls from Marcus Williams "in reference to [her] last check," no

---

[10] While O'Neal no longer worked for Protective Enterprises when it issued her final paycheck, she does not argue (or provide evidence to suggest) that anything prevented her from picking up her final paycheck from Protective Enterprises' headquarters.

message or other correspondence "[w]ith regards to [her] last check," and no phone call or message from Linda Williams "advising [her] to pick up [her] last check." See generally O'Neal's Declaration (emphasis added). However, she does not deny that Marcus Williams and Linda Williams attempted to contact her. Instead, she states that she does not know what efforts Protective Enterprises, Marcus Williams, or Linda Williams made to reach her. And she does not deny Marcus Williams' statement that he actually spoke to her mother, or that her mother "said she would let Plaintiff know that [he] called." See id. at 2. She also does not suggest that her mother failed to give her a message from Marcus Williams, instead stating only that Marcus Williams did not tell her "mother about [her] last check." Last, O'Neal does not dispute that she failed to call Marcus Williams back after he reached out to her mother.

In opposing entry of summary judgment, O'Neal also asserts that she "called multiple times about [her] last check" without receiving a response. See id. at 3; Response at 5–7. However, O'Neal does not say who she called, that she ever spoke to anyone, what they discussed, or even that she left a message that might have prompted a response. As such, the vague assertion that she made calls does little to create an issue of fact for trial in light of the affirmative statements set forth in the declarations presented by Defendants, statements that—given the opportunity to specifically dispute—O'Neal did not attempt to factually address. She also never suggests that anyone associated

with Protective Enterprises told her she could not pick up her check as she had done for the previous pay period, or that anyone or anything prevented her from doing so.   Notably, O'Neal also does not contend she was <u>unable</u> to pick up the check from Protective Enterprises' headquarters just as she had with her previous check, nor does she explain why she made no attempt to do so.[11]   <u>See</u> O'Neal's Declaration at 3.

Under the circumstances of this case O'Neal cannot create a genuine issue of fact for trial simply by denying that Defendants were successful in tracking her down after she failed to pick up her last paycheck in the same manner she had retrieved her paycheck just two weeks earlier.   Nor can she do so by denying that Defendants specifically mentioned her last paycheck in their attempts to communicate with her.   Even if all of Defendants' efforts to reach O'Neal were unsuccessful, she presents no authority suggesting that the FLSA required Defendants to make extraordinary efforts to deliver O'Neal's paycheck after she failed to collect it from Protective Enterprises' headquarters in the

---

[11] While O'Neal states that she made "numerous attempts to get her last check," <u>see</u> Response at 5; O'Neal's Declaration at 1, the only "attempts" she describes in her declaration are the "multiple calls" she made, <u>see</u> O'Neal's Declaration at 1.   O'Neal does not contend or present any factual assertions suggesting that she actually made any attempt to collect her last paycheck from Protective Enterprises' headquarters as she had collected her paycheck for the previous pay period.   Thus, her conclusory statement that she made "attempts to get [her] last check," which is devoid of any factual detail of what those attempts were and why they were unsuccessful, constitutes no more than a scintilla of evidence insufficient to defeat Defendants' Motion for summary judgment.   O'Neal simply has not presented any fact suggesting that <u>Defendants failed to pay her</u> in the manner she last requested or took any action that caused her not to receive her last paycheck.

manner she had agreed upon shortly before the end of her employment.   She also presents no authority suggesting that an employee's unilateral, unexplained failure to collect her final paycheck in the manner the employee had requested constitutes the <u>employer's</u> failure to pay a minimum wage under the FLSA.

As discussed above, the record in this action discloses the following undisputed facts:

- Until the last month of her employment O'Neal elected to receive her pay via direct deposit.

- Protective Enterprises had never mailed O'Neal a paycheck.

- O'Neal provided Protective Enterprises at least three different mailing addresses.

- Approximately a month before her employment ended, O'Neal discontinued her direct deposit authorization and elected to receive her physical paycheck from Protective Enterprises.

- O'Neal picked up her second-to-last paycheck from Protective Enterprises' headquarters.

- After O'Neal's employment with Protective Enterprises ended, Protective Enterprises prepared a final paycheck and had it available for O'Neal to pick up at its headquarters.

- O'Neal never picked up her check.

- Protective Enterprises did nothing to prevent O'Neal from entering its premises or picking up her check.

- Despite Marcus Williams having attempted to reach O'Neal through her mother—even if not mentioning the last paycheck—O'Neal did not call him back.

On this record, O'Neal has failed to create an issue of fact on her claim that <u>Defendants</u> failed to pay her as required.  O'Neal has established that she failed to receive her final paycheck, but she presents no facts supporting even an inference that the blame for her failure to do so lies with Defendants. Instead, the record reflects only O'Neal's apparent unilateral decision not to collect her final paycheck in the same way as she requested her previous paycheck be delivered and in the same way that she collected her previous paycheck.  This is insufficient to sustain a claim that Defendants violated their obligations under the FLSA.  Accordingly, O'Neal has failed to identify a genuine issue of material fact for trial, and Defendants are entitled to summary judgment as to O'Neal's claim in Count I of her Amended Complaint.

## VI.   Conclusion

O'Neal's minimum-wage claim in Count I is limited to her contention that Defendants failed to pay her for her final pay period.  And for the reasons discussed above, O'Neal has failed to identify a genuine issue of material fact for trial as to this claim, so Defendants' Motion is due to be granted to this

extent.   Because the Court previously declined to exercise supplemental jurisdiction over O'Neal's claims in Counts II and III, the Motion is due to be denied as moot as to these claims.   Accordingly, it is

**ORDERED:**

1.   The Clerk of the Court is **directed** to correct the spelling of Plaintiff Quantisha O'Neal's surname in the caption of the case.

2.   Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED in part and DENIED as moot in part**:

   a. To the extent that Defendants seek summary judgment in their favor as to the claim in Count I, the Motion is **GRANTED**.   The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendants Protective Enterprises Public Safety, LLC and Marcus D. Williams as to this claim.

   b. The Motion is otherwise **DENIED as moot**.

3.   The Clerk of the Court is **directed** to terminate any remaining motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on April 25, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record